# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| WHOON JONG KIL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | Case No. CIV-19-0215-F |
| | ) | |
| SECRETARY ROBERT WILKIE, | ) | |
| U.S. DEPT. VETERANS AFFAIRS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## **ORDER**

Defendant Robert Wilkie, Secretary of U.S. Department of Veterans Affairs, moves to dismiss this action under Rule 12(b)(6), Fed. R. Civ. P. Doc. no. 11. Plaintiff Whoon Jong Kil responded, objecting to dismissal. Doc. no. 17. Defendant filed a reply brief. Doc. no. 22.

Plaintiff brings claims under Title VII, 42 U.S.C. § 2000e *et seq.*, arising out of plaintiff's employment as a doctor for the Department of Veterans Affairs (the "VA" or "the agency") in Oklahoma City. The complaint alleges a variety of employment-related claims, specifically, race discrimination (count one), national origin discrimination (count two), sex discrimination (count three), retaliation for protected activity (count four), and hostile work environment (count five). Defendant seeks dismissal of all of these claims and also asks the court to dismiss the request for injunctive relief.

For the reasons stated in this order, the motion will be granted with respect to the discrimination and hostile work environment claims and denied with respect to the retaliation claim and the request for injunctive relief.

I. Standards

The inquiry under Rule 12(b)(6) is whether the complaint contains enough facts to state a claim for relief that is plausible on its face. Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir., 2007), quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547 (2007). To survive a motion to dismiss, a plaintiff must nudge his claims across the line from conceivable to plausible. *Id*. The mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims. Ridge at Red Hawk, 493 F.3d at 1177. In conducting its review, the court assumes the truth of the plaintiff's well-pleaded factual allegations and views them in the light most favorable to the plaintiff. *Id*. Pleadings that are no more than legal conclusions are not entitled to the assumption of truth; while legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. Ashcroft v. Iqbal, 556 U.S.662, 664 (2009).

When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. The court will disregard mere "labels and conclusions" and "[t]hreadbare recitals of the elements of a cause of action" to determine if what remains meets the standard of plausibility. Twombly, 550 U.S. at 555; Iqbal, 556 U.S. at 678. Ultimately, "determining whether a complaint states a plausible

claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

II. Summary of the Factual Allegations

The alleged facts are as follows.

According to the complaint, plaintiff is an "Asian male originally from South Korea," and an "oncologist and physician licensed in both the United States and South Korea." Doc. no. 1, ¶ 8. He worked at the VA in Oklahoma City as a radiation oncology doctor from March 5, 2017 (*id.* at ¶ 9) until his termination on December 20, 2017. *Id.* at ¶ 37.

A number of allegations deal with interactions between plaintiff and agency staff (often radiation therapists, who are also described in the complaint as technicians). The radiation therapists in question are female, Caucasian and originally from the United States. *Id.* at ¶ 11.

One of the radiation therapists told plaintiff, "Dr. Kil, I am very sarcastic. So you will have to listen, accept my sarcasm, and get used to it. Otherwise, you will have a hard time working in this clinic." *Id.* at ¶ 13. Radiation therapists refused to say "good morning" to plaintiff, excluded plaintiff from staff birthday celebrations, and failed to invite plaintiff to share food brought in by patients or staff. *Id.* at ¶ 14. Radiation therapists did not follow plaintiff's instructions for patient care (for example, regarding positioning of patients), failed to communicate plaintiff's instructions to other radiation therapists, and gave false accounts of these incidents. *Id.* at ¶¶ 15-16.

On one occasion in May of 2017, a radiation therapist did not provide plaintiff with a computer mouse when plaintiff asked for it (although the therapist eventually gave plaintiff the mouse). Radiation therapists then overrode plaintiff's instructions about how to adjust the radiation machine console to best

3

treat the patient. One of the therapists falsely complained to management that plaintiff had forcefully taken the mouse and had interrupted the radiation therapists' work. *Id*. at ¶18.

On June 28, 2017, plaintiff met with a group consisting of George Kurdgelashvili, Chief of Medicine; Darrell Raley, Administrative Officer; and Elizabeth Syzek, a white female from the United States, Director of Radiation Oncology, plaintiff's direct supervisor, and the supervisor of one of the radiation therapists (Ashley Arres, the radiation therapists' supervisor). *Id*. at ¶¶ 10, 11. At that meeting Kurdgelashvili told plaintiff there were multiple complaints about him and warned that if he heard any more complaints, he would fire plaintiff. Kurdgelashvili further stated, "I can fire you at any time without reason because you are not a U.S. citizen." Doc. no. 1, ¶ 19. One day later, when plaintiff asked Syzek what the complaints were about and asked for an opportunity to respond, Syzek told plaintiff that he was disrupting the radiation therapists' jobs and that plaintiff's explanation did not matter because there were already complaints. When plaintiff stated that the radiation therapists were not following his instructions and were making false accusations against him, Syzek told plaintiff that plaintiff was "paranoid" and should "visit a clinic for disrupted physicians." *Id*. at ¶ 20.

On August 3, 2017, Syzek yelled at plaintiff and pounded her hands on plaintiff's desk, claiming plaintiff had failed to support a receptionist who, the day before, had been in an argument with a family about scheduling. *Id*. at ¶ 20.

In August of 2017, Syzek accused plaintiff of requesting, for his own convenience, a procedure referred to as "block check time." *Id*. at ¶ 23.

4

Also in August of 2017, a radiation therapist complained to Syzek that plaintiff was not putting the proper codes in all of his patients' charts, although it was Syzek's residents who were not putting in the codes. *Id*. at ¶ 24.

In September of 2017, plaintiff asked Syzek about discussing an agency vacancy with qualified oncologists who would be attending a national oncologist conference. Syzek instructed plaintiff not to meet with or contact any physicians to discuss the vacancy. One day later, plaintiff found out by email that the agency had offered a job to a physician (a Caucasian male from the United States) who was not well qualified but who Syzek had known for years. Plaintiff had not been previously informed about that hiring. *Id*. at ¶ 25.

In September and October of 2017, radiation therapists were not following plaintiff's instructions regarding certain patient treatment matters. They falsely denied this. *Id*. at ¶¶ 26-27.

Plaintiff then emailed Chief of Staff Susan Bray-Hall and asked to meet to discuss clinical issues. Bray-Hall never responded. Syzek told plaintiff that high management officials would forward his email to Syzek and would not respond directly to the plaintiff. Syzek, however, never asked plaintiff about the clinical issues he had wished to discuss with Bray-Hall. *Id*. at ¶ 28.

About November 1, 2017, plaintiff became aware that radiation therapists had placed an unauthorized penile clip on a patient as a joke, causing the patient to undergo unnecessary radiation scans. Plaintiff confronted the radiation therapists, who falsely reported they had received a verbal order from a rotating resident. Plaintiff escalated the issue by taking it to Syzek, who sided with the radiation therapists and chided plaintiff for raising the issue. Plaintiff reported the issue to the agency's union. Without any investigation, Raley reported that there had been a verbal order from the rotating resident, who was a Caucasian from the

5

United States, although the resident acknowledged he had not issued the verbal order. *Id*. at ¶¶ 29-30.

Also, in November of 2017, plaintiff emailed Syzek and Kurdgelashvili asking if the therapists' hours of duty had changed because many were leaving early, which was affecting plaintiff's ability to perform his job with adequate support. Kurdgelashvili denied that therapists were leaving early and accused plaintiff of targeting therapists. *Id*. at ¶ 32.

On November 17, 2017, plaintiff's attendance at a lung tumor board meeting was interrupted so that he could take care of a patient who needed stereotactic body radiosurgery. This occurred although patients were not supposed to be scheduled with plaintiff while he was attending lung tumor board meetings. Plaintiff had to leave the meeting and run to the radiation oncology clinic to take care of the patient, then return to the meeting. Syzek let the radiation therapists leave early that day. *Id*. at ¶ 33.

On December 13, 2017, Syzek issued plaintiff a "negative proficiency report," which plaintiff refused to sign. In response to the report, plaintiff wrote "this evaluation was done unfairly and prejudiced." Syzek and Bray-Hall did not allow plaintiff to appeal or dispute the negative proficiency report. *Id*. at ¶ 35.

On December 18, 2017, radiation therapists refused to follow plaintiff's clinical instructions. Plaintiff detailed the resulting delay in treatment and the failure to follow his instructions in the patient's medical record. One of the therapists untruthfully reported to management that plaintiff had left radiation therapists on the scene without direction regarding the patient's care. Syzek reported to Kurdgelashvili (her supervisor) that plaintiff was "out of control" and also reported "ego fighting." *Id*. at ¶ 36.

6

Two days after the December 18 incident, on December 20, 2017, "[t]he Agency" terminated plaintiff's employment. *Id*. at ¶ 37.

### III. Defendant's Arguments for Dismissal

A. Discrete Discrimination Claims Based on Certain Events Were Not Exhausted in a Timely Manner.

As a federal employee working for the VA, plaintiff was required to exhaust his remedies with respect to his discrete discrimination claims by initiating contact with an Equal Employment Opportunity (EEO) counselor within forty-five days of the alleged discriminatory conduct. *See*, Mayberry v. E.P.A., 366 Fed. Appx. 907, 908 (10th Cir. 2010) (Environmental Protection Agency employee was required to make an informal charge to an EEO counselor at the EPA's regional office within 45 days; citing 29 C.F.R. § 1614.105; unpublished).

The complaint alleges that plaintiff initiated contact with the agency's EEO office on January 8, 2018. Doc. no. 1, ¶ 5. Accordingly, defendant argues that alleged acts which pre-date November 24, 2017 (forty-five days before January 8, 2018) are time-barred as the basis of plaintiff's discrete discrimination claims of race, national origin and sex discrimination. *See*, Beene v. Delaney, 70 Fed. Appx. 486, 490-91 (10th Cir. 2003) (affirming dismissal of action which alleged discrimination and retaliation claims; plaintiff, a federal employee, did not contact EEO counselor until after the forty-five day period had expired; unpublished). The only alleged acts which defendant argues are *not* time-barred as a basis for plaintiff's discrimination claims are those set forth in paragraphs 35-37 of the complaint. The gist of those paragraphs is: a negative proficiency report was issued by Syzek to plaintiff on December 13, 2017, after which plaintiff was not permitted to appeal or dispute the report (¶ 35); on December 18, 2017, radiation therapists refused to follow plaintiff's instructions regarding a patient's treatment,

7

after which one therapist reported the event untruthfully to management and Syzek sided with the therapists, reporting plaintiff to Kurdgelashvili as "out of control" (¶ 36); and on December 20, 2017, plaintiff was terminated (¶ 37).

Plaintiff does not contest defendant's argument that acts other than those listed immediately above (acts alleged in ¶¶ 35-37, relating to the negative proficiency report and plaintiff's termination) were not timely exhausted and therefore cannot serve as the basis for discrete discrimination claims. Plaintiff does, however, argue that all of the acts alleged in the complaint support his hostile work environment claim. (Defendant does not argue otherwise.) The court finds that plaintiff has implicitly conceded defendant's untimeliness argument.[1] Any discrete discrimination claims which plaintiff may have intended to base on acts which allegedly occurred prior to November 24, 2017 (*i.e.* all acts other than those alleged in ¶¶ 35-37) will be dismissed on the ground that they were not timely exhausted.

B. For Purposes of the Discrete Discrimination Claims, Only Termination Constitutes an Adverse Employment Action.

Of defendant's remaining alleged acts (the acts described in ¶¶ 35-37, relating to the negative proficiency report and plaintiff's termination), only plaintiff's termination constitutes an adverse employment action for purposes of plaintiff's race, national origin and sex discrimination claims. Piercy v. Maketa, 480 F.3d 1192, 1203 (10th Cir. 2007) (adverse employment action includes a significant change in employment status such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits); Calvin v. SMG, 2014 WL 321170, *7 (D. Colo.

---

[1] *And* s*ee*, LCvR7.1(g) (any motion not opposed within 21 days may, in the discretion of the court, be deemed confessed).

January 29, 2014) (negative job performance evaluation not an adverse employment action, collecting cases).

The same is true of the earlier-occurring acts, which the court has already found (in part A, *supra*) are subject to dismissal on other grounds (not timely exhausted) to the extent they were intended as the basis for discrete discrimination claims. Accordingly, any discrete discrimination claims which plaintiff may have intended to base on those earlier-occurring acts are subject to dismissal on two grounds (not timely exhausted, and no adverse employment action).

These conclusions mean that the only discrete discrimination claims which survive defendant's challenges considered to this point, are plaintiff's race, national origin and sex discrimination claims to the extent these claims are based on termination of plaintiff's employment.

C. All of the Discrete Discrimination Claims, Including the Discriminatory Termination Claims, Fail Because No Plausible Link to Plaintiff's Protected Status is Alleged.

The next issue is defendant's argument that plaintiff's discrete discrimination claims do not plausibly allege that plaintiff was treated more harshly than other employees because of his race, his national origin, or his sex. The paragraphs of the complaint which pertain exclusively to the discrete discrimination claims indicate that to allege (and eventually prove) discrimination, plaintiff relies on a comparison between how he was treated and how other agency employees were treated.[2] The complaint, however, provides

---

[2] No direct evidence of discrimination is alleged, and the complaint (as well as plaintiff's brief) relies on the framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), to allege discrimination. Plaintiff's discrimination claims allege that plaintiff was treated more harshly than other employees, a reference to the *prima facie* elements of these claims under a

only conclusory allegations in this regard. For example, the complaint does not specify exactly which employees plaintiff contends were situated similarly to him, although the court infers, from the allegations as a whole, that plaintiff would identify the radiation therapists.[3] Rather, the discrimination claims simply allege that, "The Agency discriminated against Kil based on his [race, national origin or sex] by treating Kil more harshly than it treated other non-Asian employees," and that the Agency's "stated and forthcoming reasons are false and are pretext for unlawful discrimination." Doc. no. 1, ¶¶ 42-43, 48-49, 54-55.

Furthermore, focusing on the discriminatory termination claims in particular, the closest the complaint comes to connecting plaintiff's termination to his protected status is the allegation that Chief of Medicine Kurdgelashvili stated in the June 28, 2017 meeting that, "if I hear any more complaints, I will fire you. I can fire you at any time without reason because you are not a U.S. citizen." Doc. no. 1, ¶ 19. But Kurdgelashvili's alleged statement that he could fire plaintiff at any time because plaintiff was not a U.S. citizen, came immediately after his warning that he would fire plaintiff if he heard any more complaints, which is exactly what the complaint alleges happened. The complaint alleges that on or after December 18, 2017, Kurdgelashvili heard from Syzek that plaintiff was "out of control," and plaintiff was then terminated on December 20, 2017. *Id*. at ¶¶36-

---

McDonnell Douglas analysis. The *prima facie* elements of each of plaintiff's discrimination claims include membership in a protected class, an adverse employment action, and disparate treatment among similarly situated employees. Although Rule 12(b)(6) does not require plaintiff to allege all of the elements of a claim, an understanding of the elements helps the court determine whether plaintiff has set forth a plausible claim. Khalik v. United Air Lines, 671 F.3d 1188, 1192 (10th Cir. 2012).

[3] Presuming that is the case, it is not plausible to argue that therapists are subject to the same performance and discipline standards as physicians. *See*, Aramburu v. Boeing Co., 112 F.3d 1398, 1404 (10th Cir. 1997) (similarly situated employees deal with the same supervisor "and are subject to the same standards governing performance evaluation and discipline.")

10

37. Nothing in these or any other alleged facts (including any of the alleged complaints received after Kurdgelashvili's warning) plausibly links plaintiff's protected status to his termination.

Read as a whole, the complaint details a good deal of impolite and undesirable behavior in the workplace, aimed at plaintiff. Title VII, however, does not set forth a general civility code for the American workplace. Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006), citing Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 80 (1998). *And see*, Ordonez v. Canyons School District, 2014 WL 4092900, *1 (D. Utah Aug. 18, 2014) ("no connection between the actions taken against Plaintiff and her gender, race, or national origin"; conduct was "disagreeable" but it did not provide a basis for a discrimination claim or a hostile work environment claim; granting motion to dismiss); Aliyev v. Fedex Ground Package System, Inc., 2014 WL 1338583, **1, 7 (D. Utah April 3, 2014) (native of Russia who spoke with heavy accent alleged national origin discrimination; "the difficulty with that argument [plaintiff's argument for discovery] is that Mr. Aliyev does not point to even one situation where a similarly-situated co-worker may have been treated differently"; without at least one factual allegation from which to infer disparate treatment, "the court cannot justify granting Mr. Aliyev permission to conduct what would essentially be a fishing expedition").

Nothing in the complaint plausibly links the decision to terminate plaintiff's employment, or the manner in which plaintiff was otherwise treated, to plaintiff's protected status. Accordingly, plaintiff's claims that he was terminated and otherwise treated more harshly than other employees based on his race, national origin and gender (counts one, two and three) do not state a plausible claim for

relief and will be dismissed on that basis (in addition to the other reasons stated in this order, to the extent they apply).

    D.  <u>The Hostile Work Environment Also is Not Plausible</u>.

To state a hostile environment claim, the allegations must show that the harassment is based on plaintiff's protected class or that it stems from a discriminatory animus toward the protected class. *See*, <u>Faragalla v. Douglas County School Dist. RE 1</u>, 411 Fed. Appx. 140, 152 (10th Cir. 2011) (summary judgment case, unpublished), citing <u>Tademy v. Union Pacific Corp.</u>, 614 F. 3d 1132, 1139 (10th Cir. 2008). *And* see, <u>Bekkem, M.D. v. McDonald</u>, 2015 WL 3872358 (W.D. Okla. June 23, 2015) (noting a prior order had dismissed a hostile work environment claim brought by a doctor against the VA because the complaint did not contain any facts from which it could be inferred that defendant harassed plaintiff based on a protected characteristic, at *1; finding the subsequently amended hostile work environment claim also not plausible, at *2).

In support of the hostile environment claim, the complaint alleges: that therapists refused to follow plaintiff's instructions, made-up false accounts and excluded plaintiff from staff celebrations; that Syzek sided with the therapists, called plaintiff paranoid, excluded plaintiff from the hiring process for a new doctor and gave plaintiff a negative rating on his proficiency report; that Syzek scheduled a patient during plaintiff's lung tumor board meeting; and that Syzek did not allow plaintiff to appeal a negative proficiency report. *Id*. at ¶ 67.[4] Although the complaint alleges these incidents to support the hostile work environment claim, it does not plausibly link these hostilities to plaintiff's race,

---

[4] Paragraph 67 also alleges that Syzek and the radiation therapists treated female, non-Asian employees who were not of Korean origin differently than plaintiff was treated, and that "higher management" (Kurdgelashvili and Bray-Hall) dismissed plaintiff's complaints. However, these allegations are conclusory.

national origin, or gender. Because there are no allegations which show, if proven, that the work environment was hostile to the plaintiff based on his protected characteristics, the hostile work environment claim is not plausible and will be dismissed on that basis.

  E. <u>The Retaliation Claim Survives</u>.

  The complaint alleges that plaintiff's termination was in retaliation for protected activity. *Id*. at ¶61. Defendant argues this claim is not plausible. The court disagrees.

  Under 42 U.S.C. § 2000e-3(a) it is unlawful for an employer to discriminate against an employee because the employee has opposed any practice made an unlawful employment practice by Title VII. <u>Fye v. Oklahoma Corp. Comm'n</u>, 516 F.3d 1217, 1224 (10th Cir. 2008). Accordingly, a plaintiff asserting a retaliation claim must allege facts to show illegal retaliation played a part in the employment decision in question. *See*, *id*. at 1224-25 (to prevail on a Title VII retaliation claim, plaintiff must establish that retaliation played a part in the employment decision; this may be done by directly establishing that retaliation played a motivating part in the employment decision or the plaintiff may rely on the framework of <u>McDonnell Douglas</u> to prove retaliation indirectly.) <u>Fye</u> at 1225; and 1227 (noting that one of the *prima facie* elements of retaliation is a causal connection between the protected activity and the adverse employment action). Furthermore, regardless of the framework used to show causation, all retaliation claims require the plaintiff to have engaged in protected opposition to discrimination, *i.e.* protected activity. *See*, 42 U.S.C. § 2000e-3(a) (employee must have "opposed any practice made unlawful" by Title VII).

  The complaint alleges that plaintiff engaged in protected activity on December 13, 2017, when, after being shown a negative proficiency report and

refusing to sign it, plaintiff wrote: "This evaluation was done unfairly and [is] prejudiced." *Id*. at ¶ 60. Arguably, an accusation that an evaluation was "done unfairly" is not specific enough to constitute protected activity. But plaintiff's statement that the negative proficiency report was "prejudiced" stands on firmer ground. "Prejudiced" is a word which may suggest illegal workplace discrimination protected against by Title VII. This is a plausible interpretation of "prejudiced" as used by the plaintiff on December 13, 2017, in light of allegations that, among other things, plaintiff is an "Asian male originally from South Korea" (*id*. at ¶8); that plaintiff told the radiation therapists "English was not his first language" and they should ask him to repeat his instructions if they did not understand him (*id*. at ¶17); and that Kurdgelashvili told plaintiff, "I can fire you at any time without reason because you are not a U.S. citizen." *Id*. at ¶19.

Given that this case is at a very early stage, the court will presume that plaintiff's "prejudiced" statement conveyed to his employer plaintiff's opposition to an unlawful employment practice and thus could constitute protected activity. *See*, Hinds v. Sprint/United Management Co., 523 F.3d 1187, 1203 (10th Cir. 2008) ("Although no magic words are required, to qualify as protected opposition the employee must convey to the employer his or her concern that the employer has engaged in a practice made unlawful by [in that case] the ADEA.")

In addition to alleging protected activity, a plaintiff asserting illegal retaliation must allege facts which, if proven, show retaliation played a part in the employment decision in question (termination). Fye, 516 F.3d at 1224. To prove this causal connection, a plaintiff must eventually show that the individual who took the adverse action against him knew of plaintiff's protected activity. Williams v. Rice, 983 F.2d 177, 181 (10th Cir. 1993) (summary judgment in defendant's favor on retaliation claim affirmed where plaintiff had not provided

any evidence to show he made the complaints in question or that the person who allegedly made the decision to remove the plaintiff knew about those complaints).[5]

A causal connection may be established by evidence of circumstances which justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action. Stover v. Martinez, 382 F.3d 1064, 1071 (10th Cir. 2004). Here, the alleged adverse action (plaintiff's termination on December 20, 2017) occurred within a week of the alleged protected activity (plaintiff's statement, on or about December 13, 2017, that the negative proficiency report was "prejudiced"). Given the closeness in time between these alleged events, the court will not dismiss the retaliation claim.

    E. The Request for Injunctive Relief Will Not Be Dismissed.

Defendant asks the court to dismiss the complaint's request for injunctive relief. Defendant's reply brief, however, concedes that injunctive relief is potentially available under Title VII, and the court has now found that the retaliation claim survives the motion to dismiss. Accordingly, the court declines to dismiss the request for injunctive relief at this stage. *See*, Rutherford v. Regional Hyundai, LLC, 2011 WL 4496653, *3 (N.D. Okla. Sept. 27, 2011) (Title VII authorizes the court to order reinstatement or front pay in lieu of reinstatement even if those specific remedies are not requested in the complaint; where plaintiff has stated a claim for retaliation under Title VII, it would be premature to prevent plaintiff from seeking particular types of relief at the motions to dismiss stage).

---

[5] The complaint does not allege which individual(s) made the decision to terminate plaintiff. At this stage, plaintiff may not know who made that decision. Moreover, the complaint identifies several individuals who could have been responsible for that decision. The complaint will not be dismissed for failure to identify the specific individual(s) who terminated plaintiff's employment.

IV. Conclusion

After careful consideration, the motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**, as follows. Doc. no. 11.

The motion is **GRANTED** with respect to the discrete discrimination claims alleged in count one (race discrimination), count two (national origin discrimination) and count three (gender discrimination), as well as the hostile work environment claim alleged in count five. Absent a successful amendment, leave for which is not given in this order,[6] these claims are **DISMISSED** with prejudice under Rule 12(b)(6), Fed. R. Civ. P.

The motion is **DENIED** with respect to the retaliation claim, a claim which alleges that plaintiff was terminated in retaliation for his assertion that a negative proficiency report was "prejudiced." The motion is also **DENIED** to the extent that it asks the court to dismiss the request for injunctive relief.

IT IS SO ORDERED this 23rd day of August, 2019.

_____
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

19-0215p003 rev_.docx

---

[6] Leave to amend has not been sought. Moreover, nothing in plaintiff's response brief suggests he could successfully amend the dismissed claims to overcome all of the insufficiencies identified in this order. In these circumstances, the court is not required to give leave to amend *sua sponte*. That said, this order does not preclude plaintiff from seeking leave to amend if, consistent with Rule 11, Fed. R. Civ. P., he believes he can overcome deficiencies identified in this order with respect to some or all of the dismissed claims.